# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **JIMMY ADAMS**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:02cv00044 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **THE BRINK'S COMPANY**, *et al.*, ) | By: Pamela Meade Sargent |
| ) | United States Magistrate Judge |
| Defendants. ) | |

    This case is currently before the court on the following motions seeking an award of attorneys' fees: Defendants' Motion For Award Of Attorneys' Fees To Date, (Docket Item No. 177); Defendants' Second Motion For Award Of Attorneys' Fees Incurred To File Defendants' Second Motion For Summary Judgment, (Docket Item No. 201); and Defendants' Third Motion For Award Of Attorneys' Fees, (Docket Item No. 242) (collectively, "Defendants' Motions"), and Plaintiff Brooks Addington's Motion For Attorneys' Fees And Expenses, (Docket Item No. 179), and Second Motion For Attorneys' Fees filed on behalf of the Plaintiffs Brooks Addington and Richard Hughes, (Docket Item No. 244) (collectively, "Plaintiffs' Motions"). For the reasons set forth below, the court will deny the Defendants' Motions and the Plaintiffs' Motions.

*I. Background*

This case involved the claims of 124[1] plaintiffs against their current or former employer, Paramont Coal Corporation, ("Paramont"), its current parent company, the Brink's Company, ("Brink's"), the Brink's Company Pension-Retirement Plan, ("the Brink's Plan"), and the Administrative Committee for Brink's Company Pension-Retirement Plan, ("the Administrative Committee"). The plaintiffs sought declaratory and equitable relief as well as damages under the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C.A. §§ 1001-1461 (West 1999), based on various claims related to the administration of the Brink's Plan.

Plaintiffs originally filed their Complaint in the United States District Court for the Eastern District of Tennessee on December 19, 2001. The Complaint sought recovery based on claims alleging breach of contract, estoppel, the creation of an informal plan, the reduction of accrued benefits and breach of fiduciary duty. In response, the defendants filed a motion to dismiss for failure to exhaust administrative remedies and a motion to dismiss based upon improper venue, or, in the alternative, to transfer venue to the Western District of Virginia. The court denied both motions to dismiss, but granted the defendants' motion to transfer venue.

Defendants filed their Answer to the Complaint in the Western District of Virginia on April 4, 2002. (Docket Item No. 23.) On September 6, 2002, the defendants filed a Motion For Summary Judgment seeking dismissal as a matter of

---

[1] This case involved the claims of 123 plaintiffs. The consolidated case, Civil Action No. 1:06cv00006, involved the claim of an additional plaintiff, Richard Hughes.

- 2 -

law of all plaintiffs' claims. (Docket Item No. 36.) By Memorandum Opinion and Order entered November 18, 2003, the court granted in part and denied in part the defendants' Motion For Summary Judgment. (Docket Item No. 85.) As a result, the court granted summary judgment in favor of the defendants on the plaintiffs' claims alleging breach of contract, estoppel, the creation of an informal plan and the reduction of accrued benefits. The court denied the defendants' Motion For Summary Judgment on the plaintiffs' claims alleging breach of fiduciary duty.

By agreed order entered August 20, 2004, the parties consented to the transfer of this case to the undersigned magistrate judge. (Docket Item No. 108.) By agreed order entered October 7, 2004, the parties agreed to sever the claims of five of the 124 plaintiffs to be tried to the court first. (Docket Item No. 112.) The remaining breach of fiduciary claims of those five plaintiffs, Christopher Brooks Addington, Jack Blanton, Alton Lawson Jr., Ricky D. Meade and Donald Ratliff, were tried to the court February 22 to March 1, 2005. By Findings of Fact and Conclusions of Law issued June 3, 2005, the court found that the Administrative Committee had breached its fiduciary duty owed Addington when it inaccurately informed him that his monthly early retirement benefits under the Pittston Plan would be $2,140.43. (Docket Item No. 169.) The court found no breach of fiduciary duty to the other four plaintiffs whose claims were tried.

By Order entered March 17, 2006, the court entered Summary Judgment in favor of the defendants on the breach of fiduciary duty claims of the remaining 119 initial plaintiffs. (Docket Item No. 198.) By Agreed Order entered April 13, 2006, in Civil Action No. 1:06cv00006, the court consolidated the claims of Richard Hughes

and set forth the parties' agreement as to the disposition of those claims. (Docket Item No. 200). On June 2, 2006, the court entered Final Judgment in favor of the defendants as to all claims of all plaintiffs, with the exception of the breach of fiduciary duty claims of Christopher Brooks Addington and Richard Hughes. (Docket Item No. 207.)  Judgment was entered in favor of Addington and Hughes on their breach of fiduciary duty claims only. The court ordered the Brink's Plan to rescind Addington's election to take early retirement effective January 1, 1995, and reinstate him to his full retirement benefits of $1,256 a month effective his normal retirement date of November 1, 1997, and continuing.  The court also ordered that the defendants should make payment to Hughes in accordance with the parties' agreement. The court retained jurisdiction over the parties' pending motions for fees and expenses.

On June 26, 2006, the plaintiffs noted an appeal to the United States Court of Appeals for the Fourth Circuit. On July 6, 2006, the defendants noted a cross-appeal. By unpublished opinion entered January 11, 2008, the Fourth Circuit affirmed this court's decision in this case in all respects.

*II. Analysis*

ERISA provides that a "court in its discretion may allow a reasonable attorney's fee and costs of an action to either party." 29 U.S.C.A. 1132(g)(1) (West 1999). Therefore, the determination of whether to award a party attorneys' fees in an ERISA action is "completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1028 (4th Cir. 1993). Furthermore, while only a "prevailing party" may receive an award of attorneys' fees, *see Martin v. Blue*

*Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997), there is no presumption in favor of awarding attorney's fees to a prevailing party. *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993). A party is not required to have prevailed on all claims to be considered a "prevailing party." *See G. v. Ft. Bragg Dependent Schs.*, 343 F.3d 295, 310 (4th Cir. 2003). The Supreme Court has noted that even an award of nominal damages makes a party a prevailing party. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &Human Res.*, 532 U.S. 598, 604 (2001) (*cited in Ft. Bragg Dependent Schs.*, 343 F.3d at 310).

In *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990), the Fourth Circuit approved of the district court's use of the five factors set out by the Fifth Circuit Court of Appeals in *Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980), in determining whether to award attorneys' fees in an ERISA case. *See also Quesinberry*, 987 F.2d at 1028-29. These five factors are:

1. degree of opposing parties' culpability or bad faith;
2. ability of opposing parties to satisfy an award of attorneys' fees;
3. whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
4. whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
5. the relative merits of the parties' positions.

*Reinking*, 910 F.2d at 1217-18 (quoting *Bowen*, 624 F.2d at 1266). The Fourth Circuit has held that none of these five factors is determinative, but rather they provide general guidelines for the district court's use in determining whether to grant a request to award attorneys' fees. *See Quesinberry*, 987 F.2d at 1029. Also, it is not necessary

that all five factors weigh in favor of an award of fees before an award is justified. *See Reinking*, 910 F.2d at 1218. The Fourth Circuit also has held that, when considering these five factors, a district court also should consider the remedial purposes of ERISA to ensure employees' rights and to protect access to the federal courts. *See Quesinberry*, 987 F.2d at 1029-30. "The[se] factors simply constitute the nucleus of an inquiry which seeks to identify that unusual case in which the judge may shift fees to further the policies of the statute." *Custer*, 12 F.3d at 422 (citing *Quesinberry*, 987 F.2d at 1029).

In deciding whether an award of attorneys' fees and expenses is justified under the facts and circumstances of this case, the court first notes that the defendants, as well as plaintiffs Addington and Hughes, are prevailing parties. Judgment was entered in the defendants' favor as to all claims, with the exception of Addington's and Hughes's breach of fiduciary duty claims based on the misrepresentation of their monthly early retirement benefits. While Addington and Hughes did not receive the specific relief requested, the court did enter judgment in their favor on their breach of fiduciary duty claims and rendered what it considered to be the appropriate equitable relief. That being the case, the court, in its discretion, may award attorneys' fees and expenses to any of these parties.

The court next must consider whether, in light of the five relevant factors and the remedial purposes of ERISA -- and keeping in mind that there is no presumption in favor of an award of attorneys' fees and that fees should be awarded in only that unusual case -- it should award attorneys' fees and expenses to any party. Both sides argue that the opposing side's culpability weighs in favor of an award of fees. In

particular, the defendants argue that fees should be awarded against the plaintiffs because the plaintiffs brought and persisted in a claim that the defendants purposefully engaged in a scheme to deceive the plaintiffs as to the true nature of their retirement benefits under the Brink's Plan, a claim that the evidence never supported. The defendants further argue that fees should be awarded against the plaintiffs because the plaintiffs' actions in pursuing this litigation unnecessarily delayed its resolution and increased costs. Plaintiffs argue that fees should be awarded against the defendants because the court found that the defendants' carelessness in its administration of the Brink's Plan caused the misrepresentations upon which the court granted relief to Addington and Hughes.

The parties correctly argue that opposing parties' actions do not have to rise to the level of bad faith to warrant an award of fees, *see McKeown v. Blue Cross Blue Shield of Ala.*, 497 F. Supp. 2d 1328, 1333 (M.D. Ala. 2007) (citing *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1345 (11th Cir. 2001)). In fact, at least one circuit court has recognized that a plaintiff's "dogged pursuit of [a] claim in the face of little or no legal or factual bases" might weigh in favor of an award of fees to the prevailing defendant. *See Riley v. Admin. of Supersaver 401K Capital Accumulation Plan for Employees of Participating AMR Corp. Subsidiaries*, 209 F.3d 780, 782 (5th Cir. 2000). Based on my review of the history of this litigation, however, I do not believe that the actions of either side in pursuing this litigation rose to the level of culpability necessary to weigh in favor of an award of attorneys' fees to the other.

This case was originally filed in the Eastern District of Tennessee in December 2001. The Tennessee district court granted the defendants' motion to transfer venue

to the Western District of Virginia, and the defendants filed their answer in this court on April 4, 2002. The original scheduling order entered in this district set the case for trial on February 25-28, 2003, with the deadline for the filing of dispositive motions set for December 2, 2002, and the deadline for completion of discovery set for November 1, 2002. (Docket Item No. 24.) By order entered May 31, 2002, the deadline for the filing of dispositive motions was set for November 2, 2002. (Docket Item No. 27). On July 15, 2002, the defendants filed a motion seeking court approval to depose each of the plaintiffs and other nonparty witnesses. (Docket Item No. 28). The plaintiffs opposed the motion and sought entry of a protective order. (Docket Item No. 30.) By Order entered August 9, 2002, the court denied the motion to depose all plaintiffs, stayed further discovery and set an expedited schedule for the filing of certain dispositive motions by September 6, 2002. (Docket Item No. 34.) Plaintiffs did seek, and received, permission to conduct some limited discovery with regard to this motion and an extension in their deadline to respond to these dispositive motions until after this discovery could be completed. (Docket Item Nos. 47, 60, 66.) The defendants filed a motion for summary judgment on September 6, 2002. (Docket Item No. 36.) Briefing on the defendants' motion for summary judgment was completed by April 8, 2003. The undersigned issued a Report and Recommendation on July 28, 2003, recommending that summary judgment be entered on all of plaintiffs' claims, with the exception of their breach of fiduciary duty claims. (Docket Item No. 80.) Objections were timely filed and heard, and the court adopted the Report and Recommendation by Order entered November 18, 2003.

By scheduling Order entered February 23, 2004, the court set this case for bench trial beginning February 21, 2005. (Docket Item No. 87.) The court also set

November 1, 2004, as the deadline for completing discovery and November 15, 2004, as the deadline for filing any further dispositive motions. Faced with the daunting task of conducting discovery of more than 100 plaintiffs, the court suggested, and the parties agreed, to sever and try the claims of five of the plaintiffs. The bench trial of the claims of these five plaintiffs was conducted as scheduled.[2]

The court recites this procedural history to demonstrate that it does not appear that either side's actions caused any particular delay or increased cost in the litigation of this case. In fact, to the contrary, all parties, with the occasional prodding of the court, have entered into agreements, which have, in this court's opinion, greatly reduced the time and expense necessary to present and defend these claims before this court. While in the end, the court found that the evidence presented did not rise to the level of a concerted scheme or effort to deceive the plaintiffs, as recited in the court's previous ruling, there was ample evidence that the defendants' own careless actions had contributed to the events which led to the filing of this litigation.

With regard to the parties' ability to satisfy an award of attorneys' fees, no one has alleged that the defendants could not satisfy an award and no one has alleged that the plaintiffs could. While an inability to satisfy an award may, in and of itself, warrant a denial of an award of fees against a party, the court is of the opinion that a party's ability to satisfy an award, standing alone, does not warrant an award of fees. Also, while it could be argued that the defendants' actions sought to benefit all

---

[2] The trial was inadvertently scheduled to start on the Presidents' Day holiday on February 21, 2005. When this was discovered, the first day of trial was moved to February 22, 2005.

participants and beneficiaries by protecting Plan assets, this case did not involve significant legal questions regarding ERISA itself, but rather turned on several factual disputes, which the parties were entitled to try. That being the case, the court finds that the second, fourth and fifth factors do not justify an award of fees to any party.

With regard to the plaintiffs' request for attorneys' fees, the court notes that the defendants prevailed on all claims raised by the plaintiffs, with the exception of Addington's and Hughes's breach of fiduciary duty claims. Furthermore, while the court ruled in favor of Addington and Hughes these claims, the court did not award the relief requested, but instead crafted relief in line with the defendants' position as to the terms of the Plan. Therefore, if the court were inclined to award attorneys' fees to Addington and Hughes, those fees rightfully should be only a small portion of the fees incurred. *See Christian v. Dupont-Waynesboro Health Care Coverage Plan*, 12 F.Supp.2d 535, 538 (W.D. Va. 1998) (courts should exercise discretion to reduce fees awarded based on the limited success of the party receiving the fee award).

The court further finds that, under the circumstances of this case, an award of attorneys' fees to deter future litigation is not warranted. While the court did not require the parties to file an itemized statement of the fees sought until it determined whether it would award attorneys' fees to any party, the documents currently before the court do provide some evidence of the expense incurred by both sides in the litigation of this case. From these documents, it appears that attorneys' fees and expenses for the plaintiffs, through trial, exceeded $500,000, while attorneys' fees and expenses for the defendants approached $1.2 million. Based on the size of these sums, it is hard to imagine that the imposition of any further fees and expenses would act as

any greater deterrent than those fees and expenses incurred by each party to date.

### *III. Conclusion*

For the above-stated reasons, the court will deny the Plaintiffs' Motions and the Defendants' Motions. An appropriate order will be entered.

ENTER: March 11, 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE